IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NORTH AMERICAN PRODUCE CO., et al.**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **BLJR DISTRIBUTION, LLC d/b/a BEHLOG FOODSERVICE, et al.**, <br><br> *Defendants*. | **Case No. 2:25-cv-00672-JDW** |

## MEMORANDUM

BLJR Distribution, LLC ordered produce from the ten Plaintiffs in this matter[1] and accepted delivery, but it never paid for that produce. In addition, Defendants[2] have not preserved necessary assets to make Plaintiffs whole. BLJR's conduct violates the Perishable Agricultural Commodities Act ("PACA"), and Defendants have not appeared to assert any defense. Accordingly, Plaintiffs are entitled to a default judgment for all amounts that BLJR owes each of them, including attorneys' fees and interest.

---

[1] The ten Plaintiffs are North American Produce Co. ("North American"), Ryeco, LLC a/t/a G&G Produce ("Ryeco"), E.W. Kean Co., Inc. ("Kean"), M Levin & Company, Inc. ("Levin"), Collotti & Sons, Inc. ("Collotti"), B.R.S. Produce Company t/a Frank Leone ("B.R.S."), Nardella, Inc. ("Nardella"), John Vena, Inc. ("Vena"), and Wick & Brother, Inc. ("Wick"), and Intervening Plaintiff, Primo No. 1 in Produce, Inc. t/a Primo Number One In Produce, Inc.'s ("Primo").

[2] "Defendants" refers to BLJR, Bradley Hurlburt, Leon Hurlburt, and Albert Palermo, together.

I.      BACKGROUND

A.      Facts

Plaintiffs are licensed wholesale sellers of perishable agricultural commodities, each based in Pennsylvania. As part of their respective business, each of them sold produce to BLJR, which does business in New York as Behlog Foodservice. Bradley Hurlburt, Leon Hurlburt, and Albert Palermo hold themselves out as principals of BLJR and as persons in control of BLJR's operations and assets. When active, LRJR's PACA license listed all three individuals as principals, though the United States Department of Agriculture now lists the license status as "Terminated – No Response." (ECF No. 59-2.) The individual Defendants "were involved in the day-to-day operations of BLJR, were making business decisions for BLJR, and were in a position to control PACA trust assets in BLJR's possession." (ECF No. 59 at ¶ 5.)

Plaintiffs issued timely invoices to BLJR that included specific language to preserve their interests in a trust pursuant to PACA. Between October 10, 2024, and March 24, 2025, Plaintiffs sold produce to BLJR worth $215,727.05 in the aggregate. To date, and despite accepting the produce, none of the Defendants has paid any portion of the amount owed. In addition, BLJR owes Ryeco $7,395.70 in unpaid delivery fees.

North American, Kean, Collotti, B.R.S., Nardella, Wick, and Primo's respective invoices contain provisions for contractual interest at a rate of 18% per annum, and Ryeco's invoices provide for interest at 12% per annum. While Levin and Vena's invoices

do not identify a specific interest rate, they explain that interest "shall be considered sums owing" in connection with each transaction. (ECF Nos. 62-3 & 67-3.) Each of the Plaintiffs' respective invoices also provide for an award of attorneys' fees in the event of unpaid balances.

### B.     Procedural History

On February 7, 2025, North American initiated this action to collect the invoice amounts that BLJR owes it. Then, Ryeco, Kean, Levin, and Collotti joined North American as Plaintiffs by way of a First Amended Complaint. They all filed a Second Amended Complaint, which included B.R.S., Nardella, Vena, and Wick as Plaintiffs. On May 20, 2025, Primo filed a Complaint In Intervention. Plaintiffs seek to hold BLJR, Bradley Hurlburt, Leon Hurlburt, and Mr. Palermo jointly and severally liable for the amounts that BLJR owes.

Although Plaintiffs served the Second Amended Complaint and the Compliant In Intervention on Defendants, no Defendant has responded. The Clerk entered default against Defendants as to the claims in the Second Amended Complaint on June 9, 2025, and the Clerk entered default against Defendants as to Primo's Complaint In Intervention on July 1, 2025.

In the meantime, some of the Plaintiffs moved for a preliminary injunction against Defendants. I required them to serve a copy of my Order scheduling a hearing on the motion. Despite receiving notice of this matter and the hearing on the Motion For

3

Preliminary Injunction, none of the Defendants attended the hearing or otherwise defended themselves.

Now, Plaintiffs have moved for a default judgment. Defendants' response to the motion, if any, was due on or before August 25, 2025. To date, no Defendant has appeared in this matter or otherwise opposed Plaintiffs' motion, which is ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court to enter a default judgment against a properly served defendant who fails to appear. *See* FED. R. CIV. P. 55(b)(2). To obtain a default judgment pursuant to Rule 55(b)(2), a litigant must first obtain an entry of default from the Clerk of Court pursuant to Rule 55(a). Then, the district court has discretion as to whether to grant a motion for a default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Before entering default judgment, a court must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.* A court need not find all three factors satisfied to award a default judgment.

The Third Circuit also requires consideration of the *Poulis* factors "when a district court enters a default judgment pursuant to Rule 55(b) as a sanction for failure to plead or otherwise defend." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) (internal citation omitted). Thus, in addition to the *Chamberlain* factors, a court must also consider: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary

4

caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.* at 409 n.2 (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Butler v. Experian Info. Sols.*, No. CV 14-07346, 2016 WL 4699702, at *2 (E.D. Pa. Sept. 7, 2016) (*quoting* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688.1 (4th ed.)).

### III. DISCUSSION

#### A. *Chamberlain* And *Poulis* Factors

Consideration of the *Chamberlain* and *Poulis* factors demonstrates that default judgment is warranted. *First*, Plaintiffs would suffer substantial prejudice if I were to deny them a default judgment. Having initiated this matter, it is not clear to me that they could file a separate complaint with the Secretary of Agriculture[3] or that such enforcement

---

[3] Unpaid produce sellers may enforce liability "either (1) by complaint to the Secretary ..., or (2) by suit in any court of competent jurisdiction[.]" 7 U.S.C. § 499e(b).

action would resolve in a timely fashion, in any event. *Second*, Defendants accepted the produce without objection, and absent any explanation from them, I have no basis to conclude that they have a litigable defense. *Third*, the Clerk Of Court entered defaults in this case after Defendants failed to plead, answer, or otherwise respond to the suit, and Defendants have not offered any excuse for their failure to participate in this matter in a timely fashion. *Fourth*, Defendants' conduct in this case is consistent with the way that Defendants have acted towards Plaintiffs. Once they stopped paying Plaintiffs' invoices, they either made excuses about why they were unable to make payment or they attempted to mislead Plaintiffs by promising to make payments later, but they never did. Since then, they seem to have disappeared. Just as they ignored their obligations under PACA, Defendants have ignored their obligations to respond to court filings as well. I therefore infer that their conduct is willful. Thus, the great weight of relevant factors warrants entry of a default judgment against them.

**B.     Liability**

In 1930, "Congress enacted PACA … to deter unfair business practices and promote financial responsibility in the perishable agricultural goods market." *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 419 (3d Cir. 2005). The primary goal of the statute is to protect producers of perishable agricultural products. *See id.* To that end, PACA imposes a statutory trust on all produce-related assets, including the produce itself, and any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers, and

brokers, to be held "for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C.A. § 499e(c)(2). To preserve its interest in the PACA Trust, a seller of produce must give written notice of its intent to preserve the benefits of the trust to the buyer. *See* 7 U.S.C.A. § 499e(c)(3). The seller can provide this notice via invoices, as long as those invoices include certain PACA-mandated language.[4]

PACA prohibits any licensed merchant, dealer, or broker from: "fail[ing] or refus[ing] truly and correctly to account and make full payment promptly in respect of any transaction in any such [perishable agricultural] commodity to the person with whom such transaction is had; ... or ... fail[ing] to maintain the [statutory] trust ...." 7 U.S.C.A. § 499b(4). PACA authorizes produce sellers like Plaintiffs to bring lawsuits against buyers who violate the statute. *See* 7 U.S.C. § 499e(b).

In this case, there is no question that BLJR is liable under PACA for failing to make prompt payment and for dissipating trust assets. Plaintiffs have come forward with evidence that: (1) BLJR placed orders for produce; (2) Plaintiffs delivered the produce to

---

[4] The necessary language is: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." 7 U.S.C.A. § 499e(c)(4).

BLJR; (3) BLJR accepted the produce without objection; and (4) BLJR has failed to pay Plaintiffs' invoices, despite repeated demands for payment. In addition—and for the same reasons I explained on the record during the hearing on Plaintiffs' Motion For Preliminary Injunction on June 16, 2025—Plaintiffs have demonstrated that Defendants have dissipated trust assets. Indeed, Defendants have failed to pay all ten Plaintiffs' invoices for many months now. At first, Defendants made excuses or promised future payments to put Plaintiffs off, but then they stopped responding to Plaintiffs' inquiries altogether. Before going silent, Defendants claimed to be having cash flow problems. (*See, e.g.*, ECF No. 39-4.) And since Plaintiffs filed this lawsuit, BLJR's PACA license went from being listed as "Active" to "Terminated – No Response," which suggests that BLJR is no longer operating. (*Compare* ECF No. 39-2 *with* ECF No. 59-2.) Thus, there is sufficient evidence that Defendants have failed to preserve trust assets.

In addition, Plaintiffs have come forward with sufficient evidence to impose personal liability upon the individual Defendants. "[A]n individual who is in the position to control the [PACA] trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act." *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 167-68 (3d Cir. 2010) (quotation omitted). To determine whether the individual is in a "position of control," courts must: "(1) determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (e.g., officer, director, and/or controlling shareholder);

and (2) assess whether that individual's involvement with the corporation establishes that [he] was actually able to control the PACA trust assets at issue." *Id.* at 172.

Plaintiffs' evidence demonstrates that Bradley Hurlburt, Leon Hurlburt, and Mr. Palermo all held positions that suggest they owe a fiduciary duty to preserve PACA trust assets. BLJR's former PACA license, which was in effect during the time in question, listed all of them as principles of the company. In addition, the unrebutted evidence establishes that each individual was "involved in the day-to-day operations of BLJR, … making business decisions for BLJR, and … in a position to actually control PACA trust assets in BLJR's possession." (ECF No. 59 at ¶ 5.) Thus, I will impose individual liability upon each of them, as people in positions of control over trust assets.

C.  **Damages**

Plaintiffs have offer sufficient evidence to establish their respective damages. They have provided statements of accounts and corresponding invoices that demonstrate the amounts that BLJR owes each of them for the produce it purchased. Thus, Plaintiffs are entitled to recover those amounts.

In addition, "PACA does not limit the recovery of a seller … to only the cost of the commodity itself. Indeed, Congress 'chose to allow *full payment of the sums owing in connection with [commodities] transactions*;' [which] unambiguously encompasses not only the price of commodities but also related expenses.'" *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 285 (3d Cir. 2006) (quotation omitted) (original emphasis).

"Thus, a PACA beneficiary also may recover expenses and fees that are due contractually or otherwise 'in connection with' the transaction that is the subject of the PACA trust claim." *Id.* at 286. For example, "courts have deemed certain 'handling, pallet, and freight charges [as] a necessary part of the produce transaction and therefore … included within the phrase 'sums owing in connection with' the sale of fresh fruit and produce.'" *Id.* (quotation omitted). Thus, PACA permits Ryeco to recover $7,395.70 in unpaid delivery fees in connection with two produce sales to BLJR.[5]

In addition, where, as here, "a seller succeeds on a PACA trust claim against a buyer and the contract between the buyer and seller provides a term for attorneys' fees and interest, the fees and interest are part of PACA trust claim as part of the sum owing in connection with the perishable agricultural commodities contract." *Food Team Int'l, Ltd. v. Unilink, LLC*, 872 F. Supp.2d 405, 420 (E.D. Pa. 2012). Thus, because each of Plaintiffs' invoices set forth its right to collect attorneys' fees and interest in connection with produce sales to BLJR, I will include those amounts in the default judgment against Defendants.

As for attorneys' fees, Plaintiffs' Counsel has provided a detailed declaration and supporting billing records that set forth the firm's billing practices, applicable rates, how

---

[5] Ryeco takes the position that the delivery fees "are not PACA trust protected and are owed only by Defendant BLJR." (ECF No. 60 at ¶ 11.) However, as set forth above, that is incorrect. Thus, I will defer entering default judgment as to Ryeco's claims until such time as Ryeco provides an updated prejudgment interest calculation based on a principal amount that includes the unpaid delivery fees.

10

much time attorneys have spent working on this matter, and any incurred expenses. All of these records demonstrate that the attorneys' fees and expenses at issue—$26,530.87—are reasonable.[6]

Plaintiffs are also entitled to prejudgment interest. I will apply the 18% rate to the unpaid invoices from North American, Kean, Collotti, B.R.S., Nardella, Wick, and Primo, because their respective invoices specify that amount. For the same reason, Ryeco is entitled to interest at 12% per annum. Levin and Vena are also entitled to prejudgment interest, but their invoices do not identify the applicable rate. Their suggestion that I apply Pennsylvania's 6% rate[7] is reasonable, especially in light of the other applicable rates in this case. Indeed, another judge has applied Pennsylvania's prejudgment interest rate in similar circumstances. *See Spring Valley Produce, Inc. v. Stea Bros.*, No. 15-cv-193, 2015 WL 2365573, at *3 (E.D. Pa. May 18, 2015). Thus, I will apply prejudgment interest through July 31, 2025, according to Plaintiffs' calculations set forth above.[8] Finally, Plaintiffs are entitled to post-judgment interest pursuant to 28 U.S.C. § 1961(a). In sum, Plaintiffs have

---

[6] Counsel charged a significantly reduced rate for her work on this matter and did not charge Plaintiffs for certain work she performed.

[7] Under Pennsylvania law, "[r]eference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum." 41 Pa. Stat. Ann. § 202.

[8] Plaintiffs may move to amend the judgment and provide me with updated prejudgment interest calculations.

11

produced sufficient evidence to support their requests for damages and are entitled to default judgment against Defendants for the following:

| Plaintiff / PACA Claimant | Principal Amount Due | Interest thru 07/31/2025 | Attorneys' Fees thru 07/31/2025 | Total Judgment Amount |
|---|---|---|---|---|
| North American | $32,120.00 | $3,382.90 | $4,030.62 | $39,533.52 |
| Ryeco[9] | $74,838.20 | | $9,389.29 | |
| Kean | $31,461.50 | $3,466.82 | $3,947.34 | $38,875.66 |
| Collotti | $5,570.00 | $546.13 | $699.32 | $6,815.45 |
| Levin | $19,684.00 | $640.91 | $1,945.83 | $22,270.74 |
| Nardella | $13,287.00 | $1,482.99 | $1,313.17 | $16,083.16 |
| Vena | $5,200.00 | $184.65 | $514.21 | $5,898.86 |
| Wick | $8,871.00 | $1,007.29 | $877.94 | $10,756.23 |
| B.R.S. | $6,219.00 | $794.93 | $615.25 | $7,269.18 |
| Primo | $25,872.05 | $1,669.07 | $3,197.90 | $30,739.02 |

## IV.   CONCLUSION

Plaintiffs are entitled to a default judgment against Defendants in this matter, who have failed to appear or otherwise defend themselves against Plaintiff's claims under PACA. Thus, BLJR, Bradley Hurlburt, Leon Hurlburt, and Mr. Palermo are jointly and severally liable to Plaintiffs for all sums owing in connection with the produce transactions at issue in this case, including interest and attorneys' fees. An appropriate Order follows.

BY THE COURT:

/s/ Joshua D. Wolson
JOSHUA D. WOLSON, J.

September 26, 2025

---

[9]   As set forth above, Ryeco may resubmit its prejudgment interest calculations.